```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF SOUTH CAROLINA
 2                       SPARTANBURG DIVISION

 3    UNITED STATES OF AMERICA,    )    CR. NO. 7:17-CR-938-1
                                   )    GREENVILLE, SC
 4                                 )    MAY 23, 2018
                                   )
 5           VERSUS                )
                                   )
 6    DUSTAN LAWSON,               )
                                   )
 7                DEFENDANT.       )
      _____ )
 8
             BEFORE THE HONORABLE BRUCE HOWE HENDRICKS
 9             UNITED STATES DISTRICT COURT JUDGE
                    CHANGE OF PLEA HEARING
10
      APPEARANCES:
11
      FOR THE GOVERNMENT:      JENNIFER WELLS, AUSA
12                             UNITED STATES ATTORNEY'S OFFICE
                               55 BEATTIE PLACE
13                             SUITE 700
                               GREENVILLE, SC  29601
14
      FOR THE DEFENDANT:       BENJAMIN T. STEPP, AFPD
15                             FEDERAL PUBLIC DEFENDER'S
                                 OFFICE
16                             TWO LIBERTY SQUARE
                               75 BEATTIE PLACE
17                             SUITE 950
                               GREENVILLE, SC  29601
18
      COURT REPORTER:          DEBRA R. BULL, RPR, CRR
19                             UNITED STATES COURT REPORTER
                               315 SOUTH MCDUFFIE STREET
20                             ANDERSON, SC  29624

21

22          STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
                  *** *** *** *** ***
23

24

25
```

1          (Whereupon, Court commenced at 4:42 p.m.)

2          THE COURT:  Let's go ahead and swear in the

3     Defendant.

4          THE CLERK:  May it please the Court.   Sir, raise

5     your hand to be sworn.

6          DUSTAN LAWSON, having been first duly sworn,

7     testified as follows:

8          THE COURT:  Have you been able to communicate with

9     your client just fine,  Mr. Stepp?

10         MR. STEPP:  Yes, ma'am.

11         THE COURT:  Have you explained to him the charge

12    or charges contained in the Indictment and the possible

13    punishment and his Constitutional rights, including the

14    right to a jury trial?

15         MR. STEPP:  I have.

16         THE COURT:  In your opinion, does he understand

17    all of the charges, and the punishment, and his rights?

18         MR. STEPP:  I believe he does.

19         THE COURT:  And how does he indicate he wishes to

20    plead, guilty or not guilty?

21         MR. STEPP:  Guilty.

22         THE COURT:  Do you agree with that decision?

23         MR. STEPP:  I do.

24         THE COURT:  From your own investigation of the

25    facts and circumstance of the case,  do you think the

1    Government could produce sufficient evidence to convince

2    a jury of his guilt beyond a reasonable doubt if he were

3    to stand trial, and if he were to stand trial, would his

4    conviction be probable?

5          MR. STEPP:  Yes, ma'am.

6          THE COURT:  Do you have any doubt as to his

7    competency to plead at this time?

8          MR. STEPP:  None whatsoever.

9          THE COURT:  Has he ever been submitted for a

10   mental evaluation to determine his competency to stand

11   trial?

12         MR. STEPP:  No, ma'am.

13                         EXAM

14 BY THE COURT:

15   Q.      All right.  So, Mr. -- let me get this straight --

16   Mr. Lawson, correct?

17   A.      Yes, ma'am.

18   Q.      Mr. Lawson.

19           You are now under oath, and if you answer any of

20   my questions falsely your answers could later be used

21   against you in another prosecution for perjury, do you

22   understand that?

23   A.      Yes, ma'am.

24   Q.      And I have been informed you wish to change the

25   plea that you previously entered to a plea of guilty

1      today; is that true?

2  A.        Yes, ma'am.

3  Q.        Before I can accept that guilty plea,  it is going

4      to be necessary for me to make sure that your plea is

5      made freely and voluntarily, so I am going to have to

6      ask you some questions.  If you don't understand those

7      questions, just let me know, and I will explain them to

8      you, and you can stop and talk to your lawyer about

9      anything at any time, and if you feel like you need to

10     stop and talk to your lawyer, you just let me know, and

11     I will give you time to do that, okay?

12  A.        Yes, ma'am.

13  Q.        How old are you?

14  A.        Thirty-two.

15  Q.        Where were you born?

16  A.        Spartanburg.

17  Q.        How far did you go in school?

18  A.        Graduated high school.

19  Q.        What kind of jobs have you had in your life?

20  A.        Before I was arrested, I was an insurance

21     salesman, currently I am working in warehouses.

22  Q.        Have you ever been treated for alcohol abuse, or

23     drug abuse, or mental illness?

24  A.        No, ma'am.

25  Q.        Have you taken any kind of medicine,  drugs,  any

1      kind of alcohol, over-the-counter medicine, anything

2      like that in the last 24 hours?

3  A.     Yes, ma'am.

4  Q.     What have you had?

5  A.     I had two Ibuprofen 200 milligram and the Zyrtec.

6  Q.     Okay.  All right.

7       Are you aware of any physical, emotional, or

8      nervous kind of problem that might keep you from

9      understanding what you are doing here today?

10  A.     No, ma'am.

11  Q.     Do you understand that you are pleading guilty?

12  A.     Yes, ma'am.

13      THE COURT:  And, Mr. Stepp, do you agree that

14      Mr. Lawson knows and understands what he is doing?

15       MR. STEPP:  Yes, ma'am.

16       THE COURT:  Okay.  It appears to me that

17      Mr. Lawson is competent to plead to the charges, and I

18      so find for purposes of the record.

19 BY THE COURT:

20  Q.     Are you satisfied with the manner that Mr. Stepp

21      has advised you and represented you?

22  A.     Yes, ma'am.

23  Q.     Have you talked with him for as often and as long

24      as you felt it was necessary for him to represent you?

25  A.     Yes, ma'am.

1   Q.      Do you need any more time to talk to him?

2   A.      No, ma'am.

3   Q.      Have you understood all of your conversations you

4       have had with him?

5   A.      Not at first, but he has explained them so, yes,

6       ma'am.

7   Q.      Okay.  Has he done everything for you that you

8       felt he could have or should have done for you?

9   A.      Yes, ma'am.

10  Q.      Has he failed to do anything for you?

11  A.      No, ma'am.

12  Q.      Is there anything you wanted him to do prior to

13      today that he has not done?

14  A.      No, ma'am.

15  Q.      Are you completely satisfied with his services?

16  A.      Yes, ma'am.

17  Q.      Do you have any complaint that you want to make to

18      the Court about Mr. Stepp?

19  A.      No, ma'am.

20  Q.      All right.  Under the Constitution and laws of the

21      of United States, you have got a right to plead not

22      guilty, and if you plead not guilty, you are entitled to

23      a trial by jury during which you would have the right to

24      the assistance of a lawyer to be on your defense to the

25      charges contained in the Indictment; do you understand?

1  A.        Yes, ma'am.

2  Q.        And if you were to go to trial, you would be

3        presumed to be innocent, and the Government would be

4        required to prove you guilty by competent evidence and

5        beyond a reasonable doubt before you could be found

6        guilty, and you wouldn't have to prove that you were

7        innocent; do you understand?

8  A.        Yes, ma'am.

9  Q.        So, in the course of a trial, the witnesses for

10        the Government would come to Court and testify in your

11        presence, and your lawyer could cross-examine those

12        witnesses, and then object to any evidence offered by

13        the Government, and then offer evidence on your behalf;

14        do you understand?

15  A.        Yes, ma'am.

16  Q.        At a trial, while you would have the right to

17        testify if you chose to do so, you also would have the

18        right not to testify and no inference or suggestion of

19        guilt could be drawn from the fact that you did not

20        testify; do you understand?

21  A.        Yes, ma'am.

22  Q.        And at a trial you would also have the right to

23        the issuance of subpoena or compulsory process to compel

24        the attendance of witnesses to come and testify for you

25        in your defense; do you understand?

1    A.        Yes, ma'am.

2    Q.        If you plead guilty, and I accept your plea, you

3         are going to waive your right to that jury trial and the

4         other rights I have discussed,  there won't be a trial,

5         and I will enter a judgment of guilty and sentence you

6         on the basis of that after considering a presentence

7         report; do you understand?

8    A.        Yes, ma'am.

9    Q.        If you plead guilty, and I accept your plea, you

10        will also have to give up your right not to incriminate

11        yourself since I will ask you questions about what you

12        did in order to satisfy myself that you are guilty as

13        charged, and you will have to acknowledge your guilt

14        here in open Court; do you understand?

15   A.        Yes, ma'am.

16   Q.        You may have given an incriminating statement in

17        this case.   If you plead guilty, you waive or give up

18        your right to contest or challenge whether any such

19        statement was freely and voluntarily given in accordance

20        with your Constitutional rights; do you understand?

21   A.        Yes, ma'am.

22   Q.        You may have defenses to the charge or charges

23        against you.   Do you understand that if you plead

24        guilty that you are going to waive or give up any

25        defenses to the charge or charges?

1              That is a yes?

2              Okay.

3              If you plead guilty, and I accept your plea, you

4     might be required to make restitution to the victim or

5     victims of your acts either by payment of money or in

6     personal service as might be ordered by the Court, and

7     any failure to make those payments could be a basis for

8     revoking your period of supervision; do you understand?

9  A.      Yes, ma'am.

10 Q.      If you are on probation or parole, I don't know if

11    you are or you aren't,  but if you are,  do you

12    understand that your probation or parole could be

13    revoked because of your guilty plea?

14 A.      Yes, ma'am.

15 Q.      Do you understand that when you plead guilty you

16    admit to the truth of the charge that is made against

17    you?

18 A.      Yes, ma'am.

19 Q.      And now that I have discussed these rights with

20    you and all of your rights, do you still want to plead

21    guilty?

22 A.      Yes, ma'am.

23 Q.      So,  the offense or offenses to which you are

24    pleading guilty are felony offenses.   If your plea is

25    accepted, you will be adjudged guilty of that offense or

1    offenses, and such adjudication may deprive you of

2    valuable Civil Rights, such as the right to vote,  the

3    right to hold public office, the right to serve on a

4    jury, and the right to possess any kind of a firearm at

5    all, or any single piece of ammunition; do you

6    understand?

7    A.        I do.

8    Q.        And if you are not -- you are a citizen of the

9    United States, I presume?

10   A.        Yes, ma'am.

11   Q.        If the offense carries a maximum sentence of 20

12   years or more, a probationary sentence is unavailable

13   under 18 USC 3561, and, if applicable, you might be

14   required to forfeit certain property to the United

15   States; do you understand?

16   A.        Yes, ma'am.

17   Q.        If you plead guilty, then I will have to determine

18   the appropriate sentence to be imposed.   Under the

19   Sentencing Reform Act of 1984,  the U.S. Sentencing

20   Commission has issued guidelines for judges to follow in

21   determining the sentence in a criminal case.   I am

22   required to consider the statutory factors that are set

23   out in Title 18, Section 3553(a), as well as the

24   advisory guidelines.   Have you and your lawyer talked

25   about how the guidelines and the statutory factors might

1    affect your sentence?

2  A.        Yes, ma'am.

3  Q.        Your lawyer can only give you an estimate of what

4    your guideline range might be.   Do you understand that

5    the sentence I impose might be different from any

6    estimate that Mr. Stepp might have given you?

7  A.        Yes, ma'am.

8  Q.        Now, I am not going to be able to determine the

9    guideline sentence for your case until after a

10   presentence report has been done and both you and the

11   Government will have the chance to challenge the facts

12   that are reported to me by the Probation Office; do you

13   understand?

14 A.        Yes, ma'am.

15 Q.        Your sentencing range can be substantially

16   affected by what is called "relevant conduct."   This

17   means that you could be held accountable for criminal

18   conduct in which you are directly involved in

19   preparation for,  during, or in the course of attempting

20   to avoid responsibility for the offense with which you

21   have been charged.   It also means that where you have

22   been involved in any jointly undertaken criminal

23   activity with other people, you can be held and will be

24   held accountable for the conduct of other people that

25   was both in furtherance of your jointly undertaken

1     activity and reasonably foreseeable in connection with

2     that activity; do you understand that?

3    A.        Yes, ma'am.

4    Q.        Have you discussed the concept of relevant conduct

5     with Mr. Stepp?

6    A.        Yes, ma'am.

7              THE COURT:  Is the Government going to dismiss

8     counts?

9              MS. WELLS:  No, ma'am, Your Honor.  He is going to

10    plead to all 36 counts of the Indictment.

11             THE COURT:  Okay.

12   BY THE COURT:

13   Q.        After it has been determined what guidelines apply

14    to your case,  I have got the authority, in some

15    circumstances, to impose a sentence that is either more

16    severe or less severe than that called for by the

17    guidelines; do you understand?

18   A.        Yes, ma'am.

19   Q.        And under some circumstances, both you and the

20    Government has (sic) the right to appeal any sentence I

21    might impose; do you understand?

22   A.        Yes, ma'am.

23   Q.        Parole has been abolished, and if you are

24    sentenced to prison, you won't be released on parole; do

25    you understand that?

A.        Yes, ma'am.

Q.        Under the provisions of the Sentencing Reform Act,
the Court may order a term of supervised release to
follow imprisonment in any kind of case, but the Court
must order a term of supervised release to follow
imprisonment if a sentence of more than one year is
imposed or if it is required by statute; do you
understand that?

A.        Yes, ma'am.

Q.        So, when a person is placed on supervised release,
that person is restricted as to places he might go, and
things he might do, and you must report to the
authorities on a regular basis; do you understand?

A.        Yes, ma'am.

Q.        If you violated any term or condition of that
supervised release, your supervision could be revoked
and you could be given additional time in prison; do you
understand?

A.        Yes, ma'am.

Q.        And you have heard your lawyer tell me that he has
explained to you the charge against you, possible
punishment, your Constitutional rights, and that you
understand all of these things; is that true?

A.        Yes, ma'am.

Q.        Do you understand what is going on here today?

1       That is a yes?

2    A.       Yes, ma'am.

3    Q.       Have you received a copy of the Indictment, which

4       is the written charges made against you?

5    A.       Yes, ma'am.

6    Q.       Have you discussed with Mr. Stepp the charges that

7       are in that Indictment and the case in general?

8    A.       Yes, ma'am.

9    Q.       Have you told him everything about your case?

10   A.       Yes, ma'am.

11           THE COURT:  All right.  I would ask Madame U. S.

12      Attorney to summarize the Indictment and put the

13      elements and the penalties on the record.  I would ask

14      you to listen, Mr. Lawson, and then I will ask you

15      whether or not you understand all of that, okay?

16           THE WITNESS:  Yes, ma'am.

17           MS. WELLS:  Your Honor, I spoke with Mr. Stepp

18      prior to the Court coming back onto the bench, and I am

19      going to summarize each count of the Indictment as a

20      group, there are only four charges in the actual

21      Indictment.

22           THE COURT:  Okay.

23           MS. WELLS:  But multiple charges, so if the Court

24      feels like I have not properly covered the record,

25      please don't hesitate to let me know, but I do think

1    this will cover the record as it pertains to

2    Mr. Lawson's understanding of the Indictment.

3         Your Honor, Mr. Lawson is charged in Counts 1,

4    3,  7, 9,  11,  15,  17,  19,  21,  23,  28,  32,  33,

5    and 35 of the Indictment with violation of 18, United

6    States Code, section 922(a)(6), that is basically false

7    statement made to purchase a firearm,  Your Honor.

8         The elements for each of those offenses as

9    alleged on the particular dates as to each count of the

10   Indictment are that the seller of each of the firearms

11   alleged in the previously stated counts of the

12   Indictment was a licensed firearms dealer.  That the

13   Defendant made a false statement while acquiring the

14   firearms as alleged in the Indictment from the seller.

15   And that the Defendant knew that he made a false

16   statement, and that the statement was intended to

17   deceive the seller with respect to any fact  -- sorry, I

18   can't read my own handwriting -- material to the

19   purchase or sale of this weapon.

20        As to each count of the Indictment previously

21   stated,  the elements  -- excuse me, the term of

22   imprisonment is not more than ten years,  and/or a fine

23   of $250,000,  supervised release of up to three years,

24   and a Special Assessment of $100.

25        Your Honor,  he is also charged in Counts 2,  4,

1    8, 10, 12, 16, 18, 20, 22, 29, 34, and 36 with

2    violations of 18, United States Code, Section 922(d).

3    This is a sale of a firearm to a felon or an individual

4    convicted of a crime for which they could have received

5    a sentence in excess of one year.

6         As to each of the counts where he is charged

7    with violation of 922(d), the elements are that:  The

8    Defendant sold a firearm to an individual who had a

9    conviction for which he could have received a sentence

10   in excess of one year.   That that individual was

11   actually -- had that conviction.   That at the time of

12   the sale, the Defendant knew that the purchaser, in this

13   case TK, was a convicted felon as previously defined.

14        As to each of the counts previously stated in

15   violation of 18, United States Code, Sections 9  --

16   Section 922(d), the penalty is not more than ten years

17   imprisonment, a fine of not more than $250,000, three

18   years supervised release, and a Special Assessment of

19   $100.

20        Your Honor, as to -- he is also charged with

21   violations of the National Firearms Act, which is 26 USC

22   -- there is two separate violations of that, 26 USC

23   Section 5861(e), that is a transfer of a firearm to a

24   prohibited person in violation of  the NFA, and he is

25   charged with that in Counts 6, 14, 25, 27 and 31.

1     As to those violations of 26 USC Section 5861(e),

2  the elements are that the defendant transferred a

3  firearm to an individual not authorized by law to

4  receive said firearm, and that the firearm alleged in

5  each of those counts was subject to the provisions of

6  Title 26, Section 850 -- 5861(b).  And as to each of

7  the counts -- each violation of 26 United States Code

8  5861(e), the sentence can be imprisonment for up to ten

9  years, a fine of up to $10,000, three years supervised

10  release, and a $100 Special Assessment.

11     Finally, Your Honor, Mr. Lawson is charged

12  with violations of 26, United States Code, Section

13  5861(l), that is false statement to possess an NFA

14  firearm.  An NFA firearm is usually a suppressor or

15  something like that that is covered by the National

16  Firearms Act, and he is charged with that in Counts 5,

17  13, 24, 26, and 30.

18     As to each of those counts that are violations

19  of 26 USC Section 5861(l), the elements are that:  The

20  Defendant made or caused to be made a false entry on any

21  application or record that is required by a Title 26,

22  Chapter 53 of the United States Code, and that he did so

23  knowing such entry to be false.  The penalty for each

24  of the 26, United States Code, Section 5861(l)

25  violations is imprisonment for up to ten years, a fine

1    of up to $10,000,  a three-year supervised release, and

2    a $100 Special Assessment.

3           THE COURT:  Okay.

4  BY THE COURT:

5  Q.      All right then.  Do you understand the nature of

6    the charges against you and the range of possible

7    punishment?

8  A.      Yes, ma'am.

9  Q.      Do you still want to plead guilty?

10  A.      Yes, ma'am.

11  Q.      Did you commit this offense?

12  A.      Yes, ma'am.

13  Q.      Okay.  Offenses?

14           MR. STEPP:  Just one thing,  Judge.

15           THE COURT:  Yeah.

16           MR. STEPP:  On the counts off of 922(d),  the

17    transferring a firearm to a prohibited person, I believe

18    I heard the Government use language like he sold a

19    firearm to a prohibited person in violation of the

20    statute,  the indictment, I think, just lists knowingly

21    transfer, I think it is a distinction without a

22    difference, but I think these were factually the

23    evidence I think is going to support a transfer and not

24    necessarily a sale.

25           THE COURT:  Okay.

1          MS. WELLS:  I have no objection to saying that

2     that would be the elements then would be knowing the

3     transfer.   I do think that is one of the elements as it

4     reads,  Your Honor.

5          THE COURT:  Okay.

6  BY THE COURT:

7   Q.      Well, then, do you still want to plead guilty

8      Mr. Lawson?

9   A.      Yes, ma'am.

10  Q.      And did you commit this offense, I think I already

11     asked you that?

12  A.      Yes, ma'am.

13          THE COURT:  I find that the Defendant fully

14     comprehends and understands the nature of the charge

15     (sic) against him, and generally what elements the

16     Government would have to prove if a trial were held.

17     Is there any plea agreement at all? He is pleading to

18     every Count?

19          MS. WELLS:  That's correct, Your Honor.  There is

20     no plea agreement in this case.

21  BY THE COURT:

22  Q.      Has anyone promised you what sentence you might

23     receive?

24  A.      No, ma'am.

25  Q.      Do you still want to plead guilty?

1  A.      I do.

2  Q.      Has anyone promised you anything at all or held

3      out any kind of hope of a reward to get you to plead

4      guilty?

5  A.      No, ma'am.

6  Q.      Has anyone threatened you, accosted you,

7      intimidated you, or used force to get you to plead

8      guilty?

9  A.      No, ma'am.

10  Q.      Have you had enough time to decide whether or not

11      you do want to plead guilty?

12  A.      Yes, ma'am.

13  Q.      Are you pleading guilty of your own free will --

14  A.      I am.

15  Q.      -- in court?

16          THE COURT:  All right.  Madame U.S. attorney, I

17      would ask you to summarize the evidence.

18          MS. WELLS:  Thank you very much, Your Honor, may

19      it please the Court.   Your Honor,  on November 3rd of

20      2016, officers with the Bureau of Alcohol,  Tobacco and

21      Firearms Greenville Field Office were contacted by the

22      Spartanburg County Sheriff's Office in regards to a

23      search that was being conducted at an address on Wofford

24      Road in Woodruff, South Carolina.   Agents were advised

25      that a search warrant had been obtained for the property

that belonged to an individual who was being
investigated for some crimes, and during a search of
that property, numerous guns and a large amount of
ammunition was discovered.

In addition to the firearms and ammunition,
Spartanburg County investigators also stated that some
of the firearms that had been recovered had silencers
attached to them.  ATF then was contacted several days
later by a member of the Spartanburg County Sheriff's
Office to seek some further assistance during it's
investigation, this was a murder investigation and a
kidnapping investigation in Spartanburg.  And at that
point, investigators with the Sheriff's Office said that
during their investigation, that the name of Dustan
Lawson had come up as an individual who may have made
some of the purchases of the firearms from the residence
from a store -- at least one store in the Greenville
area, Academy Sports, which is a registered -- is a
licensed firearms dealer.

During that, Special Agents with the ATF
conducted a query of multiple sales through E-trace and
found multiple sales report for Mr. Lawson, and they
were able to confirm that some of -- at that point that
some of the firearms on the property in Woodruff had, in
fact, been purchased by Mr. Lawson.

1          During the course of this investigation,  this

2     involved a large number of firearms that were seized and

3     investigators had to go back, the ATF does not have a

4     magic computer, as the Court well knows, where they can

5     just enter this information and it comes back, they have

6     to do a fair amount of footwork and legwork to figure

7     out who actually made the purchases using E-trace, and

8     other -- and also literally going through forms and also

9     going through some of the evidence that was seized

10    during the search of this property.   And they were able

11    to determine that Mr. Lawson, over a course of time that

12    -- since at least November of 2009, Mr. Lawson -- there

13    were 29 purchases made on behalf of this individual who

14    was prohibited from possessing firearms, he had a prior

15    conviction from Arizona that rendered him a felon.

16    Mr. Lawson had purchased all but three of the weapons

17    that other individuals had purchased for this person who

18    is identified in the indictment as TK.   Mr. Lawson had

19    purchased the vast quantity of those weapons, and each

20    of the weapons that are within the statute of

21    limitations are charged in this Indictment,  Your Honor.

22          During the course of this investigation in

23    November of 2016, officers did have an opportunity to

24    sit down with Mr. Lawson at his attorney's office,  not

25    Mr. Stepp, he had asked someone, a local attorney to sit

1    with him during the interview.   They asked him a number

2    of questions around this, and Mr. Lawson, during that,

3    admitted that he knew the individual TK that he was

4    purchasing weapons for was not only a registered sex

5    offender, but that he knew that he was a convicted

6    felon.

7          Your Honor, what Mr. Lawson would do is he would

8    go at the request of this individual and make purchases

9    of firearms from various firearms dealers in the area,

10   Academy Sports was one very popular one,  and there are

11   some other (sic), as well.  And he would make

12   representation on the forms that he, as the Court well

13   knows, you have to sign paperwork to make purchase of

14   firearm, you also have to do that to purchase

15   suppressors or other fire -- what are defined as

16   firearms under the NFA.   Mr. Lawson would represent

17   that he was the individual that he was purchasing the

18   firearm for well knowing that he had no intention of

19   keeping the firearm that he would later transfer it to

20   TK for TK's own purposes.   All of the weapons that were

21   later determined to be purchased by Mr. Lawson were

22   found at TK's residence.

23          So,  Your Honor,  and those are some of the

24   facts the Government would rely upon at trial in this

25   case.

1                    THE COURT:  All right.

2    BY THE COURT:

3    Q.      Mr. Lawson, do you agree with the prosecutor's

4       summary of what you did?

5    A.      Yes, ma'am.

6    Q.      Are there any questions that you want to ask her

7       before we go on?

8    A.      No, ma'am.

9    Q.      Have you understood all of my questions?

10   A.      Yes, ma'am.

11   Q.      Do you have any questions for me before we go on?

12   A.      No, ma'am.

13   Q.      How do you wish to plead?

14   A.      Guilty.

15   Q.      Are you guilty?

16   A.      Yes, ma'am.

17                   THE COURT:  It is the finding of the Court in the

18      case of United States versus Dustan Lawson that the

19      Defendant is fully competent and capable of entering an

20      informed plea.  The guilty plea is a knowing and

21      voluntary plea supported by an independent basis in fact

22      and containing each of the essential elements of the

23      offense.   This plea is, therefore, accepted, and he is

24      now adjudged guilty of that offense.

25                       How is he doing on bond, Mr. Metcalf?

1          PROBATION OFFICER:   Your Honor,  there is (sic)

2     no current bond violations.

3          THE COURT:  So, all of the conditions of your bond

4     still apply, and you must abide by them and abide by the

5     law, and the penalties for violating any conditions

6     could be severe.   A written presentence report is going

7     to be prepared by the U. S. Probation Office, and if you

8     -- when you are questioned by them, you have the right

9     to have your lawyer there with you if you want.   You

10     will have a chance to read that and object to it if you

11     like, the Government will get it and be able to object

12     to it as well if they like.   I will be hearing from

13     both sides at sentencing, and you can speak on your own

14     behalf at sentencing.   So,  we will see you at that

15     time.   Okay.   Thank you.

16        (The Court hearing concluded at 5:07 p.m.)

17             *** END OF REQUESTED TRANSCRIPT ***

18      *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *

19                 CERTIFICATE OF REPORTER

20        I certify that the foregoing is a correct

21     transcript from my stenographic notes in the

22     above-entitled matter.

23

24

25     S/Debra R. Bull, RPR, CRR        December 10, 2018
                                              Date